**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julie Chavez, | No. CV-12-01124-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendants. | |

Plaintiff Julie Chavez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her supplemental security income under section 1614(a)(3)(A) of the Social Security Act. The Court will vacate the Commissioner's order and remand for further proceedings.[1]

**I.   Background.**

Plaintiff was born in July 1974. She testified at her hearing that she has a ninth grade education and worked in the past as a fast food and cafeteria worker. The ALJ found that Plaintiff suffered from the following severe impairments: nonobstructive hypertrophic cardiomyopathy and anxiety. A.R. 17. The ALJ also found that Plaintiff suffered from the following non-severe impairments: obesity, status post anal fistulotomy with placement of setons, and headaches. A.R. 17. The ALJ found the impairments have

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

significantly limited Plaintiff's ability to perform basic work activities for a period of twelve consecutive months or more.  A.R. 17.

On September 18, 2009, Plaintiff applied for supplemental security income, alleging disability beginning April 24, 2009.  The claim was denied initially on September 29, 2009, and upon reconsideration on May 13, 2010.  Plaintiff filed a written request for hearing on June 10, 2010.  On April 14, 2011, she appeared with her attorney and testified at a hearing before the ALJ.  A vocational expert also testified.

On April 20, 2011, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

**II.     Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*  As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.    Five Step Sequential Evaluation.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears

1 the burden of proof on the first four steps, but at step five the burden shifts to the
2 Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

3 At the first step, the ALJ determines whether the claimant is engaging in
4 substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not
5 disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant
6 has a "severe" medically determinable physical or mental impairment. § 404.1520(a)
7 (4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the
8 ALJ considers whether the claimant's impairment or combination of impairments meets
9 or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt.
10 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.*
11 If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's
12 residual functional capacity and determines whether the claimant is still capable of
13 performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled
14 and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he
15 determines whether the claimant can perform any other work based on the claimant's
16 residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v).
17 If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

18 At step one, the ALJ found that Plaintiff meets the insured status requirements of
19 the Social Security Act and that she has not engaged in substantial gainful activity since
20 September 18, 2009. At step two, the ALJ found that Plaintiff has the severe
21 impairments of nonobstructive hypertrophic cardiomyopathy and anxiety. At step three,
22 the ALJ determined that Plaintiff does not have an impairment or combination of
23 impairments that meets or medically equals an impairment listed in Appendix 1 to
24 Subpart P of 20 C.F.R. Pt. 404.

25 At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform sedentary
> work as defined in 20 CFR 416.967(a) except that claimant
> can only occasionally climb, balance, stoop, kneel, crouch,
> and crawl; must avoid concentrated exposure to cold, heat,

>fumes, odors, dusts, gases, chemicals, machinery, and unprotected heights; and limited to simple, unskilled work.

The ALJ further found that Plaintiff is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.  Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ improperly evaluated Plaintiff's credibility and discounted her subjective testimony; and (2) the ALJ erroneously weighed medical source evidence. The Court will address each argument below.

**A.  The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if there is no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 21. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. A.R. 21. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a limited sedentary work environment.

Plaintiff testified at the hearing that she has worked part-time at Glendale High School as a cafeteria worker for four years. A.R. 347, 351. She stated that due to

lightheadedness and other symptoms associated with her heart condition, she takes as many as six 15-minute breaks during her four and a half hour shift. A.R. 355. She testified that she is exhausted by her job and takes a two hour nap after work each day. A.R. 355. Plaintiff also testified that she gave birth to her son on June 10, 2009 after a pregnancy that had been complicated by her heart condition. A.R. 352. She testified that she lapsed into congestive heart failure five days after giving birth. A.R. 353-54. Plaintiff testified that she experiences the following symptoms in connection with her heart condition: palpitations, lightheadedness, clamminess, shakiness, and shortness of breath. A.R. 354-56. She also stated that she quit smoking about a year before the hearing. A.R. 350. As to her anxiety, Plaintiff testified that she was just beginning treatment for anxiety, but that she had not received any kind of counseling for her anxiety to date. A.R. 361-62. Plaintiff also testified that she had no limitation in her hands. A.R. 373.

The ALJ gave specific, clear, and convincing reasons for discrediting this testimony. First, the ALJ noted that although Plaintiff testified that she suffers from disabling anxiety, "there is no record of treatment for this impairment beyond consistent prescriptions for Xanax." A.R. 21. Plaintiff does not dispute this finding or otherwise claim that there is evidence in the record that she received treatment for anxiety.

Second, the ALJ found that "the treatment record does not support [Plaintiff's] contention that her [cardiac] impairment is disabling." A.R. 21. This conclusion was supported by substantial evidence. Plaintiff's symptoms improved significantly over time and especially in 2010 (A.R. 312-13, 322, 333); Plaintiff repeatedly denied symptoms such as rapid heart rate, lightheadedness, palpitations, or syncope that could make her cardiac impairment disabling (A.R. 245, 248, 255, 258, 262, 286, 335, 336); when Plaintiff reported disabling symptoms in connection with her cardiac impairment, the symptoms have been short lived (A.R. 232, 286, 335); treating physicians have reported that Plaintiff is doing well and is "clinically stable," (A.R. 322, 333).

Third, although Plaintiff alleged that headaches, lightheadedness, and shortness of breath prevented her from working in a competitive work environment, the ALJ found that Plaintiff had a "commendable work history" during the period that she claimed to be disabled and unable to work. A.R. 22. Plaintiff argues that this reason for discounting her subjective testimony is not logical because she receives significant accommodations at the high school which are not consistent with competitive employment. Doc. 32 at 7. Although Plaintiff was accommodated at her part-time employment as a cafeteria worker, the Court finds that the ALJ reasonably determined that Plaintiff's ability to work part-time for four years cast doubt on her claims that she was unable to work in a competitive work environment. *See* 20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Fourth, the ALJ found that Plaintiff's daily activities were not consistent with the limitations she alleged. Because Plaintiff was able to care for herself and her family, grocery shop, and handle her family's finances, the ALJ reasonably concluded that Plaintiff's testimony alleging inability to function in a work environment was not credible. A.R. 22.

The Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony. This conclusion was not legal error.

### B. Weighing of Medical Source Evidence.

#### 1. Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship,

frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Panagiotis Panotopoulos, M.D.

Plaintiff argues that the ALJ committed legal error by improperly discounting the opinion of one of her treating cardiologists, Dr. Panatopoulos, M.D. Doc. 28 at 17. On August 25, 2009, Dr. Panotopoulos recorded "impressions and recommendations" in which he opined that, based on Plaintiff's poor exercise tolerance, she would be unable to work. A.R. 236. The ALJ accorded Dr. Panotopoulos' opinion little weight. A.R. 22.

Dr. Panotopoulos' medical opinion was contradicted by the opinion of Dr. Erika Wavak, M.D., a non-examining physician who opined Plaintiff had greater abilities than those identified in Dr. Panotopoulos' opinion. A.R. 22. The ALJ therefore could discount Dr. Panatopoulos's opinion for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

Plaintiff argues that the ALJ committed legal error by relying primarily on the medical opinion of non-treating physician, Dr. Wavak, who did not testify at Plaintiff's hearing and who had not reviewed all of the most recent medical records. Doc. 28 at 24; Doc. 32 at 5. Although Plaintiff is correct that ALJs must generally accord greatest weight to the medical opinion of a treating physician and must accord reduced weight to non-treating and non-examining physicians, the contradicted opinions of treating physicians can be discounted for specific and legitimate reasons supported by substantial evidence.

The ALJ noted that Dr. Panotopoulos' opinion "did not include a function-by-function analysis of [Plaintiff's] physical capacity but rather just the conclusion that [Plaintiff] should not work." A.R. 22. The ALJ explained that the opinion did not receive controlling weight because it addressed an issue reserved for the Commissioner's determination under SSR 96-5p. A.R. 22. In addition, the ALJ noted that the opinion was not time-limited and was inconsistent with Plaintiff's recent work history. A.R. 22.

The ALJ's reasons for discounting Dr. Panatopoulos' opinion are specific, legitimate, and supported by substantial evidence. First, the ALJ was justified in discounting Dr. Panatopoulos' opinion because it is conclusory and brief. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation omitted). The opinion does not address whether Plaintiff can function eight hours per day for five days a week, nor does it detail any limitations on her ability to perform in a competitive work environment or discuss the degree and debilitating effects of her heart condition. Instead, the opinion merely states: "Based on her poor exercise tolerance, I think that she would be unable to work." A.R. 236. This conclusory assertion is not entitled to deference. *See* SSR 96-5p, 1996 WL 374184 (Jul. 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). The Court concludes that the ALJ was warranted in discounting Dr.

Panatopoulos' opinion. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (finding that an ALJ need not accept a treating physician's opinion which is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion.").

Second, Plaintiff testified that she had worked for the past four years in a high school cafeteria. A.R. 350-51. Plaintiff was able to sustain part-time work during the same period of time when Dr. Panotopoulos concluded that she could not work at all. The Court finds, therefore, that the ALJ reasonably concluded that Dr. Panotopoulos' opinion was contradicted by Plaintiff's reports of her own abilities. The Court concludes that the ALJ's decision to discount Dr. Panatopoulos' opinion was not legal error.

### 3. Dr. Rossum, MD.

Plaintiff argues that the ALJ failed to articulate sufficient reasons for giving limited weight to the opinion of her other treating cardiologist, Dr. Alfred Rossum, M.D. Doc. 28 at 21. On August 25, 2009, Dr. Rossum joined Dr. Panotopoulos' recorded "impressions and recommendations" in which they opined that Plaintiff would be unable to work based on her poor exercise tolerance. A.R. 236. As explained above, the ALJ did not err in according this conclusory opinion little weight. A.R. 22.

On July 22, 2010, Dr. Rossum completed a check-the-box form opining that Plaintiff could occasionally lift and/or carry ten pounds, frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for less than two hours in an eight hour work day, and sit (with normal breaks) for less than six hours in an eight hour work day. A.R. 300. Dr. Rossum opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl; could occasionally grasp, finely manipulate, feel, and reach with either hand; and should avoid exposure to moving machinery, extreme temperatures, chemicals, and dust. A.R. 301-02. On September 20, 2010, Dr. Rossum completed another check-the-box form opining that Plaintiff's cardiac impairment would interfere with her attention and concentration. A.R. 304. The ALJ purportedly adopted all of Dr. Rossum's assessments except for the manipulative restrictions contained in the July 22, 2010 opinion. A.R. 23-24. In actuality, the ALJ did not adopt all of the restrictions

assessed by Dr. Rossum and failed to discuss a number of Dr. Rossum's assessed limitations that restricted Plaintiff to less than sedentary work. Specifically, the ALJ's RFC did not adopt or otherwise discuss the following limitations contained in Dr. Rossum's opinion: Plaintiff could stand and/or walk (with normal breaks) for less than two hours in an eight hour work day; sit (with normal breaks) for less than six hours in an eight hour work day; and Plaintiff's cardiac impairment would interfere with her attention and concentration.

The ALJ committed legal error by failing to adopt or otherwise address all of Dr. Rossum's assessed limitations, and the Court cannot conclude that the error was harmless. Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

Plaintiff argues that the error is harmful because "the assessed limitations [ignored by the ALJ] were the basis for uncontested expert testimony that no sustained work could be performed." Doc. 28 at 24; A.R. 375. At Plaintiff's hearing, the vocational expert agreed that "full-time, regular and continuing work on a sustained basis would be precluded" if Plaintiff's condition were consistent with Dr. Rossum's opinion in which he stated that Plaintiff's symptoms prevented her from "sitting, standing and walking" eight hours and caused "preoccupation and [] interfering thoughts and anxiety." A.R. 375. Defendant rejoins that the ALJ's failure to properly discuss all of the limitations in Dr. Rossum's opinion was harmless because the ALJ discussed evidence elsewhere in the decision that discredited those portions of Dr. Rossum's opinion that are inconsistent with the RFC. *See Zettelmier v. Astrue*, 387 F. App'x 729, 731-32 (9th Cir. 2010) (holding that an ALJ's failure to consider a physician's opinion in its entirety can be harmless); *see also Molina v. Astrue*, 674 F.3d at 1120 (stating that under harmless error analysis, a court may consider whether the ALJ gave reasons supported by substantial

evidence for rejecting undiscussed lay witness testimony); *see generally Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (listing many situations where ALJ's mistake was nonprejudicial to the claimant or irrelevant to the ultimate disability conclusion).

It is true that the ALJ addressed a second physician's opinion – the opinion of Dr. Wavak – at length. A.R. 22. Dr. Wavak opined that Plaintiff had capabilities consistent with sedentary work. A.R. 218-25. The ALJ found that the medical evidence in the record was consistent with Dr. Wavak's opinion. A.R. 22. In support of this conclusion, the ALJ made multiple relevant findings rooted in the record: Plaintiff's symptoms improved significantly over time and especially in 2010 (A.R. 312-13, 322, 333); there is no record of treatment for Plaintiff's anxiety beyond consistent prescriptions for Xanax (A.R. 21); Plaintiff repeatedly denied symptoms such as rapid heart rate, lightheadedness, palpitations, or syncope that could make her cardiac impairment disabling (A.R. 245, 248, 255, 258, 262, 286, 335, 336); when Plaintiff reported disabling symptoms in connection with her cardiac impairment, the symptoms have been short lived (A.R. 232, 286, 335); treating physicians have reported that Plaintiff is doing well and is "clinically stable" (A.R. 322, 333); Plaintiff's daily activities and "commendable work record" are inconsistent with disability (A.R. 22). Given this extended discussion by the ALJ, the Court concludes that the failure to address the physical limitations in Dr. Rossum's opinion was harmless.

The ALJ did not, however, specifically address the concentration and attention limitations on which Dr. Rossum opined. A.R. 304. Because the ALJ did not address them – with respect to Dr. Wavak's opinion or otherwise – the Court cannot conclude that the failure was harmless. The ALJ could reject Dr. Rossum's opinion on this issue only for legitimate and specific reasons, which he did not provide. This was legal error.

**V.     Remand**.

Having decided to vacate Defendant's decision, the Court has the discretion to remand the case for further development of the record or for an award benefits. *See*

- 11 -

*Reddick v. Chater,* 157 F.3d 715, 728 (9th Cir. 1998).  Where an ALJ fails to provide adequate reasons for rejecting the opinion of a physician, the Court must credit that opinion as a matter of law.  *Lester*, 81 F.3d at 834.  In *Smolen v. Chater,* the Ninth Circuit held that evidence should be credited and an action remanded for an immediate award of benefits when the following three factors are satisfied: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  80 F.3d 1273, 1292 (9th Cir.1996).

Because the ALJ failed to provide adequate reasons for rejecting Dr. Rossum's opinion that Plaintiff's cardiac impairment would interfere with her attention and concentration, that opinion must be credited as true.  *See Lester*, 81 F.3d at 834.  The Court finds, however, that crediting this portion of Dr. Rossum's opinion as true does not mandate a finding of disability.  The disabling effect of Plaintiff's attention and concentration deficits is not clear from the vocational expert's testimony.  The expert was asked whether these limitations, when combined with the physical limitations included in Dr. Rossum's opinion (which the ALJ properly discredited), would prevent Plaintiff from working.  A.R. 375.  Although the expert said yes to this compound question, the expert was not asked whether the attention and concentration limitations alone would have that effect.  The appropriate remedy, therefore, is to remand the case to the ALJ for further development of the record on this issue.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **VACATED** and this case is **REMANDED** for further proceedings consistent with this opinion.  The Clerk shall enter judgment accordingly and shall **terminate** this case.

Dated this 8th day of May, 2014.

_____
David G. Campbell
United States District Judge